**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eulandas Flowers, ) | CV-03-1782-PHX-JAT |
| ) | |
| Petitioner, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| William Gaspar, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ) | |
| _____) | |

Pending before the Court is Petitioner Eulandas Flowers's amended Petition for a Writ of Habeas Corpus (Doc. #6) and Petitioner's Motion for Extension of Time (Doc. #22). Magistrate Judge Mathis issued a Report and Recommendation ("R&R")(Doc. #21) on June 14, 2005 recommending that the Writ of Habeas Corpus be denied.

**I.    STANDARD OF REVIEW**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1126 (D.Ariz. 2003). Because objections were filed, the Court will review the findings and recommendations *de novo*.

## II.     BACKGROUND

On September 5, 1996, a jury in Maricopa County Superior Court convicted Petitioner on one count of first degree murder (felony murder), one count of conspiracy to commit armed robbery, one count of attempted armed robbery, and one count of aggravated assault. (Doc. #6 at p.1).  The trial court imposed concurrent sentences of life, 15 years, and 15 years for the murder, attempted armed robbery, and aggravated assault convictions, respectively, served consecutively with the conspiracy to commit armed robbery sentence of 12.5 years. (Doc. 13, Exhibit C at p. 3).  Petitioner filed a timely notice of appeal.  *Id.*  Petitioner raised four issues on appeal to the Arizona Court of Appeals.  *Id.* at p. 3-4.  The Arizona Court of Appeals affirmed on March 10, 1998.  *Id.* at p. 1.  Petitioner did not appeal to the Arizona Supreme Court and his conviction became final on April 16, 1998.  (Doc. #13, Exhibit D at p. 1).

On August 20, 2000, Petitioner filed a petition for post-conviction relief in the state trial court pursuant to Ariz.R.Crim.P. 32.1(e).  (Doc. # 13, Exhibit E).  Petition asserted the right to file an otherwise untimely Rule 32 petition alleging newly discovered evidence pursuant to subsection (e).  (Doc. #13, Exhibit E at p. 5).  Specifically, Petitioner asserted new evidence in the form of an affidavit from John Anthony Davis, his accomplice during the murder-robbery. In the affidavit, dated September 15, 1999, Mr. Davis states that "at his trial my statements were false, and the reason why I lied was to receive [sic] the plea bargain" and that "I concocted a story from what I heard on the news, from the police, and what I thought could have happened, so I lied." (Doc. #13, Exhibit E at Attached Affidavit).

Petitioner later filed a "Supplement to Rule 32 Petition" and a "Supplement to Petition for Post-Conviction Relief..." (Doc. #13, Exhibit G).  Attached to the supplements were affidavits from Demont Hill and Bobby Tatum, respectively.  *Id.*  Hill and Tatum were accomplices in the murder-robbery who were convicted and received substantial sentences. (Doc. #13, Exhibit H at p. 2)

In his affidavit, dated February 7, 2001, Hill states Kevin Stevenson was the person who fired the gun. (Doc. #13, Exhibit G). He further states that "Jay [Petitioner] was in and

- 2 -

out of consciousness because he was drunk, and he didn't have recollection of what was happening." *Id.* Hill also stated that "as a fact, the reason I said he [Petitioner] did is because Kevin Stevinson [sic], John Davis, Bobby Tatum, and myself, said if we were caught that night that Jay should take the blame because he was the youngest and wouldn't get any serious jail time since he was a juvenile. *Id.* Hill did not testify at Petitioner's trial. (Doc. 13, Exhibit L at p. 3).

Bobby Tatum, in his February 23, 2001 affidavit, states that everyone had been drinking and that "Mr. Flowers was not conscious at the time the crime was committed. He was passed out." (Doc. #13, Exhibit G). Mr. Tatum also identifies Mr. Stevenson as the shooter. *Id.* Mr. Tatum states that the group decided that Petitioner "would carry the weight of the crime if we caught" as he was the youngest and the group believed he would "only get juvenile time" even though "that was a misconception." *Id.* Tatum states he wanted to testify during Petitioner's trial, but "because of my own case pending I was advised by counsel not to and it wasn't a good idea." *Id.*

On April 24, 2001, the trial court ruled on "whether the proposed testimony of Demont Hill and/or Bobby Tatum is newly discovered evidence." (Doc. #13, Exhibit J at p. 1). The trial court stated that "[p]ursuant to *State v. Dunlap*, 187 Ariz. 441, at 446, 930 P.2d 518, at 543 (1996) and the circumstances of this case, the Court determines that neither Hill nor Tatum's testimony is 'newly discovered' evidence. *Id.*

On May 25, 2001, the trial court held an evidentiary hearing. Davis, after consulting with counsel, refused to testify at the evidentiary hearing after the Court and prosecutor informed him of the potential for revocation of his plea agreement. (Doc. #20x at p. 1,11-12). The only person to testify at the hearing was Clarence McNeil, a convicted felon, who testified that Mr. Davis had told him that he had perjured himself. *Id.* at 19. The trial court dismissed the Rule 32 petition on the grounds that the evidence was not "the kind of evidence that would probably change the verdict." *Id.* at 42.

On September 11, 2002, the Arizona Court of Appeals denied review without comment of Petitioner's petition for review, which raised the same claim and cited the same affidavits from his accomplices. (Doc. #13, Exhibit N; Doc. #13, Exhibit L).

On September 11, 2003, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. #1) with this Court. The case was referred to Magistrate Judge Virginia A. Mathis on September 11, 2003 (Doc. #2). Petitioner filed an amended petition on October 17, 2003 (Doc. #4) and a second amended petition on November 26, 2003 (Doc. #6). Respondents filed an Answer (Doc. #12) filed on January 30, 2004. On September 9, 2004, Magistrate Judge Mathis ordered the parties to address the issue of whether a claim of actual innocence may result in consideration of an otherwise untimely petition. Respondents filed a Supplemental Answer on November 9, 2004. Magistrate Judge Mathis issued a Report and Recommendation ("R&R")(Doc. # 21) on June 14, 2005. The magistrate judge determined that Grounds I, II, and III of the amended petition are procedurally barred from habeas review and recommended that the Writ of Habeas Corpus be denied. Petitioner subsequently filed a Motion to extend time to file objections (Doc. #22), Objections to Report and Recommendations (Doc. #24), and Supplemental Citation of Legal Authority for his Objections to Report and Recommendations (Doc. #25).

Petitioner, in his amended Petition for Writ of Habeas Corpus raised the following grounds for relief:

**GROUND I:** INEFFECTIVE ASSISTANCE OF COUNSEL

(1) FAILURE TO PROPERLY CROSS-EXAM STATE'S WITNESS MR. OVERBY (HUSBAND) THEREFORE NOT SHOWING HIS INCONSISTENCY IN PREVIOUS INTERVIEW PROTAINING [sic] TO THE IDENTITY OF THE SUSPECT. KEY TO CONVICTION FOR [PETITIONER] WAS MADE TO BE SHOOTER.

(2) FAILURE TO CALL FOR MIS-TRIAL ON GROUNDS THAT DETECTIVE DURING CROSS-EXAMINATION AND DIRECT EXAMINATION MENTIONED THAT NUMEROUS WEAPONRY WERE FOUND IN [PETITIONER'S] BEDROOM ([PETITIONER] 16 YRS OLD AT TIME). ALSO EXCESS WEAPONRY HAS ABSOLUTELY NOTHING TO DO WITH CASE. HIGHLY SUGGESTIVE AND INFLAMMED [sic] THE JURY.

(3) ONLY HAD APPROX. (3) SHORT VISITS WITH COUNSEL IN 2 ½ WAITING PERIOD BEFORE TRIAL. NEVER ESTABLISHED A DIALOGUE

ABOUT THE CASE.  NEVER HAD A CHANCE TO BRIEF COUNSEL ON MY INTEREST IN THE CASE.  NEVER HAD A CHANCE TO UNDERSTAND RIGHTS OR WHICH DIRECTION WE SHOULD PERSUE [sic] FOR THE BEST BENEFIT OF THE 16 YR OLD DEFENDANT.

**GROUND II:** U.S. CONSTITUTION AMENDMENT IV.[sic], V, VI, VII, XIV.

NEVER HAD ADEQUATE LEGAL COUNSEL TO INSURE THAT NONE OF MY RIGHTS WERE VIOLATED. PREVIOUS TO TRIAL HAD ONLY (3) (10 MIN OR LESS) VISITS WITH CONSEL [sic]. NONE EXPLAINING ANYTHING ABOUT MY RIGHTS OR DISCUSSING IN LENGTH VIABLE INTEREST IN MY CASE. DUE PRO [sic].

**GROUND III:** NEWLY DISCOVERED EVIDENCE, VIOLATIONS OF ALL CONSTITUTIONAL RIGHTS! DUE PROCESS VIOLATIONS!

IN WHICH (3) OF [PETITIONER'S] CO-DEFENDANTS HAVE PUT IN AFFIDAVITS STATING THAT [PETITIONER] HAD NOTHING TO DO WITH THE CRIME WHICH WAS CHARGED.  HE WAS SEVERLY [sic] INTOXICATED.  ALSO STATED STAR WITNESS - JOHN ANTHONY DAVIS ALSO PUT TOGETHER AFFIDAVIT STATING THAT HE LIED ON THE STAND TO PUT IN A PLEA AGREEMENT WHERE HE WAS TO RECEIVE [sic] (7.5 YRS) FOR HIS TRUTHFUL TESTIMONY WHICH UPON THE "EVIDENTIARY HEARING' [sic] PROSECUTION CAME INTO COURT BEFORE JUDGE AND [PETITIONER'S] LAWYER WITH JUST JOHN A. DAVIS, EULANDAS FLOWERS, BALIFF [sic] OF MARICOPA COUNTY, AND STATE APPOINTED COUNSEL FOR JOHN A. DAVIS, WILLIAM CLAYTON - PROSECUTION CAME INTO COURT STATING THE [sic] IF JOHN A. DAVIS TOOK THE STAND TODAY ON [PETITIONER'S] BEHALF HE WOULD REVOKE HIS PLEA BARGAIN AND HE WOULD CHARGE HIM WITH HIS INITIAL CHARGES ALL OVER AGAIN.  THAT IN FACT HE INTIMIDATED WITNESS [sic] THROUGH VERBAL INSINUATION OF CHARGING ALL OVER AGAIN. MAKING JOHN A. DAVIS PLEA THE 5TH AMENDMENT. BUT HIS COURT APPOINTED COUNSEL PLEAD 5TH ON HIS BEHALF BUT ALSO STATED THAT HER CLIENT WANTED TO DO THE "RIGHT THING."

(Doc. #6 at p. 5-7).

Respondents, in their Answer (Doc. #12), request that the Petition be denied and dismissed with prejudice because they assert it is untimely and is barred by the statute of limitations as set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA).

In Petitioner's Supplemental Citation of Legal Authority, Petitioner argues that pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) Petitioner is entitled to have a jury find beyond a reasonable doubt any aggravating factor increasing his sentence.

## III.  DISCUSSION

### A.  Statute of Limitations.

In the Anti-Terrorism and Effective Death Penalty Act of 1996, Congress created a 1 year statute of limitations for all petitions for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The pertinent part of 28 U.S.C. § 2244 states:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on April 16, 1998.  (Doc. #13, Exhibit D at p. 1). Ariz.R.Crim.P. Rule 32.4 states "the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in direct appeal, whichever is the later."  The Arizona Supreme Court addressed the appropriate time to raise ineffective assistance of counsel claims in *State v. Spreitz*, 202 Ariz. 1, 39 P.3d 525 (Ariz. 2002).  The Arizona Supreme Court in *Spreitz* states "we reiterate that ineffective assistance of counsel claims are to be brought in Rule 32 proceedings." 202 Ariz.

at 3, P.3d at 527. Grounds I and II were waived under Arizona's Rule 32 when this deadline was not observed. Additionally, Grounds I and II became barred by AEDPA's 1 year statute of limitation on April 17, 1999.

On or around September 15, 1999[1], Petitioner became aware of Mr. Davis's affidavit and the statements Mr. Davis made to Mr. McNeil. The 1 year time limit for federal habeas relief began running at this time[2]. Petitioner did not file for post-conviction relief until August 20, 2000. He claimed that newly discovered evidence pursuant to Ariz.R.Crim.P. Rule 32.4 demonstrated his actual innocence. Petitioner's claim regarding newly discovered evidence and actual innocence was denied on the merits. Pursuant to § 2244(d)(2) the federal statute of limitations was tolled from August 20, 2000 until September 11, 2002. The denial became final on September 11, 2002 when the Arizona Court of Appeals denied review. Even though the Petition was filed on September 11, 2003, contrary to the November 26, 2003 date Respondents contend, more than one year of un-tolled time passed from the time Petitioner became aware of the existence of the newly discovered evidence until the September 11, 2003 filing of the Petition.

---

[1] The Court is not aware of the exact date Petitioner became aware of the information. The Court believes it is likely the Petitioner was aware of the information possessed by Mr. Davis and/or Mr. McNeil before September 15, 1999. Even if Petitioner became aware of the information after this date, the claim will still be barred unless Petitioner became aware of the information on the same date the Petition for Post-Conviction Relief was filed, August 20, 2000. The Court does not believe this to be likely and even if proven to be true, it would not affect the ultimate disposition of the case.

[2] For the purposes of this analysis, the Court is assuming the "newly discovered" evidence fulfills the requirements of "the factual predicate of the claim or claims presented" as required under 28 U.S.C. § 2244(d)(1)(D).

- 7 -

Specifically, the Court will grant Petitioner equitable tolling from the time his conviction became final until he obtained his newly discovered evidence (September 15, 1999). Further, Petitioner is entitled to statutory tolling for the period from when his post-conviction relief petition was filed, August 20, 2000, and when he post-conviction relief proceeding became final, September 11, 2002. However, eleven month elapsed between when Petitioner obtained his newly discovered evidence (September 15, 1999) and when he filed his petition for post-conviction relief (August 20, 2000). Petitioner did not have anything pending in state court during this period, so he is not entitled to statutory tolling. Petitioner can receive equitable tolling for this time only if he pursued his claim with reasonable diligence. *See Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003). While the Court would agree that some amount of time to file the petition for post-conviction relief after receiving newly discovered evidence would warrant equitable tolling, this Court does not find an eleven month to be the exercise of reasonable diligence.

Following the Arizona Court's final resolution of the post-conviction relief petition on September 11, 2002, Petitioner waited 365 days, until September 11, 2003, before filing his Federal habeas petition. Therefore, if Petitioner does not receive equitable tolling of even one day of the period between when he received the newly discovery evidence and when he filed his petition for post-conviction relief, the Petition is barred by the statute of limitations. As stated above, the Court does not find eleven months to be the exercise of reasonable diligence; therefore, the Petition in this case is untimely.

With respect to the additional affidavits in the Supplements to the Petition for Post-Conviction Relief (Doc. #13, Exhibit G), those additional affidavits were signed and sworn

- 8 -

before a notary on February 7, 2001 and February 23, 2001. While these affidavits support the factual predicate the Petitioner became aware of on or around September 15, 1999, they do not establish a new factual predicate. Therefore, because the additional affidavits are based on the same factual predicate as the September 15, 1999, affidavit, the additional affidavits do not create a new 1 year statute of limitations period and are also barred by the statute of limitations. Therefore, Ground III is barred in its entirety by the statute of limitations.

The Court declines to adopt the R&R to the extent it conflicts with the above. Specifically, the Magistrate Judge restarted the statute of limitations period upon the Arizona Courts completion of their review of the post-conviction relief petition based on newly discovered evidence (filed on August 20, 2000, and reaching final decision on September 11, 2002). Because this Court disagrees that Petitioner is entitled to equitable tolling for the entire eleven months between obtaining his new evidence and filing his petition for post-conviction relief, the Court disagrees with the R&R that this Petition is timely.

**B. Right to Have Jury Find Aggravating Factors**

In Petitioner's Supplemental Citation of Legal Authority (Doc. #25), Petitioner argues that pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) Petitioner is entitled to have a jury find beyond a reasonable doubt any aggravating factor increasing his sentence. The Court disagrees. The Ninth Circuit Court of Appeals has held that *Blakely* does not retroactively apply to cases that were not on direct appeal at the time of the decision. *See Cook v. United States*, 386 F.3d 949 (9th Cir. 2004). Petitioner's conviction became final

on April 16, 1998. (Doc. #13, Exhibit D at p. 1). As *Blakely* was decided 6 years after Petitioner's final direct appeal, Petitioner's argument is rejected.

### C. Procedural Default

Even if the claims were not barred by statute of limitations, the Court agrees with the Magistrate Judge that all three grounds for relief are procedurally barred.

A federal court may not grant a writ of habeas corpus on behalf of a person in custody pursuant to a State court judgment unless the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States" and the petitioner has exhausted all state remedies. 28 U.S.C. § 2254(a-b). The exhaustion doctrine, laid out in § 2254(b), states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>     (A) the applicant has exhausted the remedies available in the courts of the State; or
>     (B) (i) there is an absence of available State corrective process; or
>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Two options for exhaustion exist. The first requires a petitioner to fully raise and litigate an issue before the Arizona State courts. Petitioner admits that he did not raise Grounds I, II, or III of the amended Petition in state court. (*See* Doc. #6 at p. 5-7). Grounds I and II were never raised at point in any state proceeding. While the essence of Ground III was presented in the post conviction relief proceeding, it was premised on state law grounds rather than as a violation of his federal due process rights, as he now alleges. (*See* Doc. #13 at Exhibits E, G, and L; Doc. #6 at p. 7).

The second manner of exhaustion exists when petitioner can demonstrate that no state remedies are available at the time the petition for habeas relief is filed. Failure to exhaust

claims by fully litigating the issue before the State courts results in a petitioner being procedurally barred. This is done to "minimize friction between federal and state courts by allowing the state an initial opportunity to pass upon and correct alleged violations of a petitioner's federal rights... and to foster increased state court familiarity with federal law." *Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988). The requirement that state remedies be exhausted reflects the principles of federal-state comity. *Id*. A procedural default bars litigation in a federal habeas corpus proceeding unless the petitioner can show "cause and prejudice." *Reed v. Ross*, 468 U.S. 1. 11 (1984). "'Cause' is a legitimate excuse for the default, and 'prejudice' is actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991).

Petitioner claims that he was unable to bring an effective assistance of counsel claim in his Rule 32 Petition as he was represented by the same counsel as he had at trial. To establish cause for a procedural default the claim must rise to the level of a violation of a petitioner's constitutional rights. *Crockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003). Attorney error or ignorance, by itself, does not establish cause unless the error or ignorance rises to the level of constitutional violation of Petitioner's rights. *Id*. at 944.

As discussed above, the appropriate time to bring an ineffective assistance of counsel claim is in a Rule 32 proceeding. Petitioner failed to do so. The possible error by counsel to bring this claim cannot rise to the level of a constitutional violation of Petitioner's rights because Petitioner had no constitutional right to counsel on post-conviction review. *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Further, Petitioner has not alleged any

- 11 -

sufficient objective factor showing a factual or legal reason for being unable to raise any of the claims in a state court.

### D. Actual Innocence

If a petitioner fails to show cause and prejudice, a Petitioner "may obtain review of his constitutional claims only if he falls within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). "In order to pass through *Schlup*'s gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, *including evidence not introduced at trial*, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Griffin v. Johnson*, 350 F.3d 956, 962-963 (9th Cir. 2003) (citing *Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002))(emphasis in original).

Petitioner claims the "newly discovered" evidence he presents shows that he is innocent of the crimes for which he was convicted. (Doc. #24 at p. 4). His "newly discovered" evidence consists of affidavits from petitioner's accomplices Bobby Tatum, Demont Hill, and John Davis. (Doc. #6 at p. 7). There is also the testimony of Clarence McNeil who testified at Petitioner's Rule 32 proceeding that Mr. Davis had previously stated that he had lied during Petitioner's trial. (Doc. 20x at p. 15-30).

Bobby Tatum, in his February 23, 2001 affidavit, states that everyone had been drinking and that "Mr. Flowers was not conscious at the time the crime was committed. He was passed out." (Doc. #13, Exhibit G). In his affidavit, dated February 7, 2001, Hill states Kevin Stevenson was the person who fired the gun. (Doc. #13, Exhibit G). He further states

- 12 -

that "Jay [Petitioner] was in and out of consciousness because he was drunk, and he didn't have recollection of what was happening." *Id.* Hill also stated that "as a fact, the reason I said he [Petitioner] did is because Kevin Stevinson [sic], John Davis, Bobby Tatum, and myself, said if we were caught that night that Jay should take the blame because he was the youngest and wouldn't get any serious jail time since he was a juvenile." *Id.* In the affidavit, dated September 15, 1999, Mr. Davis states that "at his trial my statements were false, and the reason why I lied was to receive [sic] the plea bargain" and that "I concocted a story from what I heard on the news, from the police, and what I thought could have happened, so I lied." (Doc. #13, Exhibit E at Attached Affidavit).

While the evidence that Petitioner was not the trigger man may not be a crucial factor in determining guilt predicated on felony murder, the evidence concerning whether or not he was "passed out" during the crimes is crucial. If Petitioner was unconscious during the entire event or during the times the conspiracy was formed and the armed robbery was attempted and Mrs. Overby was fatally shot, Petitioner might not be guilty of the crime upon which the felony murder is predicated. If that is true, the felony murder conviction could not be sustained.

However, "[r]ecantation testimony is properly viewed with great suspicion." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233, 105 S.Ct. 34, 36 (1984) (Brennan, J., dissenting). The reliability of Mr. Davis's affidavit is suspect as it contradicts his trial testimony and violates his plea agreement where he agreed to testify truthfully.. Additionally, Mr. Davis did not testify in support of the affidavit at Petitioner's Rule 32 hearing. The affidavits of Mr. Hill and Mr. Tatum, as convicted felons, must be weighed against the testimony of uncharged

accomplice Kevin Stevenson and the husband Mr. Overby. The record does not indicate Mr. Stevenson or Mr. Overby recanting their testimony. However, if the affidavits truthfully state that Mr. Stevenson was the shooter instead of Petitioner, the Court would not expect to find Mr. Stevenson recanting.

Despite the potential doubt Petitioner has raised, the Court cannot conclude "in light of all the evidence, *including evidence not introduced at trial*, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Griffin,* 350 F.3d at 962-963.

The Court declines to adopt the R&R to the extent it conflicts with the above.

Accordingly,

**IT IS ORDERED** that the Court grants the Motion for Extension of Time (Doc. #22) to the extent that the Written Objections are considered timely.

**IT IS FURTHER ORDERED** that the Report and Recommendation of Magistrate Judge Mathis (Doc. #21) is adopted only to the extent, and with the limitations, provided above.

**IT IS FURTHER ORDERED** that Petitioner Eulandas Flowers's amended Petition for a Writ of Habeas Corpus (Doc. #6) is **DENIED**.

DATED this 25th day of October, 2005.

James A. Teilborg
United States District Judge